## SWIFT, executor of *Mary Kent, against* EDSON and others.

A decree of foreclosure on a bill brought by the first mortgagee, will not affect the equitable rights of the assignee of a second mortgagee, who was not a party to such bill.

Nor is it necessary for the assignee of a second mortgagee, in order to protect his equitable rights, to give notice of the assignment to the first mortgagee.

A mortgagor, who has conveyed to another his equity of redemption, having no longer an interest in the subject, ought not to be made a party to a bill of foreclosure.

A decree of foreclosure, without any subsequent act *in pais*, is an appropriation of the pledge, and an extinguishment of the mortgage debt.

Where a testatrix gave certain pecuniary legacies. to be paid. by her executor, out of her estate, and had, at the time of making her will, sufficient personal property to pay such legacies ; it was held, that they were not charged on her real estate.

A foreclosure, obtained by a mortgagee, after the publication of a will, converts

the mortgage from personal into real estate, which descends to the heirs, unincumbered by any bequest in the will not charged upon the real estate.

But to produce this effect. the foreclosure must be complete, extending to every person having a right to redeem.

Therefore, where a mortgagee, after the publication of a will, foreclosed the mortgagor, but omitted to foreclose the assignee of a second mortgagee; it was held, that the mortgage remained personal estate, constituting a fund, in the hands of the executor, for the payment of debts and pecuniary legacies.

This was a bill in chancery for a foreclosure and other relief. On a hearing before the superior court in *Fairfield* county, the facts were found ; and the case was reserved for the opinion of this Court.

*Daniel S. Godfrey*, being indebted, by note, to *Mary Kent*, the plaintiff's testatrix, in the sum of 2,950 dollars, on the 23rd of *March*, 1813, mortgaged to her a tract of land, as collateral security. In *November*, 1816, as further security for the same note, he mortgaged to her the undivided moiety of four tracts of land, held in common with *David B. Godfrey* ; one of which tracts contained about 75 acres. In *August*, 1819, he with *D. B. Godfrey*, being indebted, by note, to *William Hoyt*, in the sum of 552 dollars, 39 cents, mortgaged to *Hoyt* the tract of 75 acres ; which note and mortgage were afterwards assigned by him to *Sarah Hubbell*. In *August*, 1820, *D. S. Godfrey* conveyed to *John S. Andrews* his equity of redemption in the land mortgaged to Mrs. *Kent*. On the 3rd of *April*, 1817, *Lewis Gorham* became indebted to Mrs. *Kent* in the sum of 150 dollars ; and, as collateral security, mortgaged to her a tract of land. None of these debts have ever been paid to Mrs. *Kent*, otherwise than by an appropriation of the respective mortgages, in the manner hereafter mentioned.

All the tracts of land morgaged, were foreclosed in the lifetime of Mrs. *Kent*, with the exception of that of 75 acres ; in respect of which, *Sarah Hubbell*, the assignee, was not made a party to the bill.

In *December*, 1817, before the foreclosure of the mortgages, Mrs. *Kent* made her last will, specifically devising to *Mary Clift*, her daughter, two tracts of land, and bequeathing pecuniary legacies, to be paid, by her executor, out of her estate, to her daughters, *Mary Clift*, *Mary Edson* and *Abigail Henry*, and to her son, *John Hazard*, amounting to nearly 7,000 dollars. The residue of her estate, both real and personal, she then devised and bequeathed to such daughters and son, to be equally divided between them.

At the time the will was made, the pecuniary legacies were sufficient nearly to exhaust the personal estate of Mrs. *Kent*; and the mortgages not being foreclosed, she contemplated the payment of the legacies in part from this source. Unless the land foreclosed be now applied for this purpose, there will be a deficiency in payment of nearly one half of the pecuniary legacies.

The time limited for the payment of the debts secured by mortgage, expired not long before the death of Mrs. *Kent*; and neither she, during her life, nor her executor since, has had possession of the premises foreclosed, or derived any benefit from them.

The bill prayed a foreclosure, as against *Sarah Hubbell*, of the 75 acre tract of land; and that the defendants convey to the plaintiff their right to the real estate aforesaid, in order that it may be applied in payment of the pecuniary legacies.

*Sherman* and *Swift,* for the plaintiff and the legatees, contended, 1. That the interest of the mortgage, previous to foreclosure, is personal estate, and may be disposed of, as such, by will. It goes to the executor, in contradistinction to the heir. *Pow. Mort.* 683. & seq. *R b. Frauds,* 275. 367. —— v. *Hicks,* 1 *Vern.* 412. *Noy* v. *Ellis,* 2 *Chan. Ca.* 220.

2. That Mrs. *Hubbell,* the assignee of *Hoyt,* had an equity of redemption in the 75 acre tract. *Crosby* v. *Brownson,* 2 *Day* 425. *Austin* v. *Burbank,* 2 *Day* 474. Not being a party to the bill of foreclosure, the decree did not affect her equitable rights. It was not necessary for her to give notice of her claim. *Godfrey* v. *Chadwell,* 2 *Vern.* 601. *Morret* & al. v. *Westerne,* 2 *Vern.* 663. Before the court can say, that notice was necessary, they must take the broad ground, that the assignee, to protect his lien, must give notice of the assignment to all prior mortgagees.

3. That if Mrs. *Hubbell* redeems, she must pay the whole debt to the executor; and she will have right to the whole land. A right to redeem at all, is a right to redeem the whole; for the right is indivisible. *Franklin* v. *Gorham,* 2 *Day,* 142.

4. That a foreclosure by a decree, without actual possession, will not change the nature of the property, so as to prevent its passing by the will. *Awdley* v. *Awdley,* 2 *Vern.* 193. 2 *Fonb. Eq.* 288. It has never been decided here, that foreclosure simply is payment of the debt. It is not of itself an appropriation of the pledge. It is the actual entry and taking possession

*Fairfield,*
June,
1825.

Swift
*v.*
Edson.

by the mortgagee, which evinces the intention, and has the effect of converting the personal estate into real.

*Sherwood,* for the defendants, and the heirs at law, after remarking, that the testatrix knew the condition of the property in question, at the time of making her will; that it may be reasonably inferred, that she intended that the residue of her estate should descend to her heirs at law; and that, without the interference of a court of chancery, the title was well vested in such heirs; contended, 1. That the foreclosure of the *Godfrey* mortgage was binding on the assignee of *Hoyt*; and was final, after the expiration of the time limited in the decree. The assignment to Mrs. *Hubbell* did not carry with it the pledge, as against third persons, who had no notice of such assignment. In such case, the *record* is to shew who is mortgagee. 1 *Madd. Chan.* 434. & seq.

2. That a foreclosure, by the mortgagee, of the equity of redemption, is a full satisfaction of the debt; it being necessarily an appropriation of the pledge. *Coit* v. *Fitch, Kirby* 254. 2 *Swift's Syst.* 440. In *The Derby Bank* v. *Landon,* 3 *Conn. Rep.* 62. possession happened to be a fact in the case; and the Court, in view of the case before them, said foreclosure and possession constituted a satisfaction of the debt; but it never has been decided, that foreclosure alone would not have the same effect.

3. That mortgaged premises, foreclosed by the mortgagee, after the making of a will, are newly acquired estate. 2 *Swift's Dig.* 168.

4. That *David B. Godfrey* ought to have been made a party to the bill.

HOSMER, Ch. J. I will, in the first place, remove from consideration certain controverted points, that the merits of the case may appear more perspicuously.

That the tract of land mortgaged to *Hoyt,* of which mortgage *Sarah Hubbell* is the assignee, has not been foreclosed, is unquestionable. Mrs. *Hubbell,* was no party to the bill for foreclosure; and, of consequence, her equity of redemption was not affected by the decree passed upon it. 2 *Pow. Mort.* 1055. *Smith* v. *Chapman* & al. 4 *Conn. Rep.* 344. 346. To the foreclosure of Mrs. *Hubbell,* unless she pay the incumbrance, there is no objection.

The omission to make *David B. Godfrey* a party to the bill

brought by Mrs. *Kent*, can have no effect on the foreclosure. He had no interest in the subject, and ought not to have been made a party.

As little effect is attributable to the omission to take possession of the lands foreclosed, either by Mrs. *Kent* or her executor. In the *System* of Judge *Swift*, (*vol.* 2. *p.* 440.) the foreclosure alone is considered (and such probably was the law at the time of publishing this work) as taking the estate mortgaged out of the nature of a pledge, and appropriating it in payment of the debt. It is true, that in *The Derby Bank* v. *Landon*, 3 *Conn. Rep.* 62. this Court adjudged, that the taking possession of mortgaged premises, by the mortgagee, under a decree of foreclosure, is, by operation of law, an extinguishment of the mortgage debt. The case, as the plaintiff had taken possession, demanded no further extension of the principle; but no doubt existed in my mind, nor, as I presume, in the minds of any of the Court, that the appropriation resulted from the decree, and not from any act *in pais*. In *Awdley* v. *Awdley*, 2 *Vern.* 193. it is said, that if the mortgagor be foreclosed, "yet in case the mortgagee be not actually in possession, it (*i. e.* the mortgaged premises) shall be looked upon as personal estate." This is one of those subjects, in which, by the well known practice in this State, and universally received opinions, there is little harmony with the determinations in *Westminster-Hall*. To a foreclosure we attribute a stable and conclusive effect, very different from the doctrine on this subject in the *English* court of chancery. Foreclosures, for example, will be opened for cause; but not for the reasons which are held sufficient, by the court last alluded to. If there are subsequent incumbrancers, not parties, the decree is opened in the *English* chancery; but here, it is conclusive. *Smith* v. *Chapman*, 4 *Conn. Rep.* 344. So, in *England*, a mortgagee, after a foreclosure, may proceed on his bond or other collateral security; (2 *Pow. Mort.* 1075.) but I presume no such doctrine would be sanctioned by this Court. In short, the decree of foreclosure, obtained deliberately and voluntarily, by the mortgagee, is, *from its nature*, the highest evidence of an appropriation of the pledge; and to its force nothing is added, by the comparatively feeble act of taking possession. This principle is just, convenient and in prevention of future litigation.

Notice to Mrs. *Kent*, by Mrs. *Hubbell*, of the assignment to her, by *Hoyt*, of his mortgage, the latter was under no legal ob-

ligation to give. It was at her peril that she made the proper parties to her bill of foreclosure.

The pecuniary legacies bequeathed by Mrs. *Kent*, were not charged on her real estate. There always has existed a great distinction between a charge on the realty, whether it is for the payment of debts or of legacies. As to the former, the courts have gone on a slight implication and moral principle; but as to legacies, there must be a clear manifest intention that the devisee or heir shall take subject to the legacies. *Knightly* v. *Knightly*, 2 *Ves.* jun. 328. In this case, it was determined, that a last will, in which the testator directed "all his legal debts, *legacies* and funeral expenses to be *fully paid* and *discharged*," was no charge on the real estate devised; and yet the personal property was insufficient for this purpose. Charges on land in favour of a legacy are usually made by the expression "to be paid *out of my lands*," or in other forms of phraseology manifesting a clear intention; but the expression in a last will, made by a testatrix, who had sufficient personalty to pay all her pecuniary legacies, that they should be paid, by her executor, *out of her estate*, is nothing more than what the law implies. The legacies were payable out of Mrs. *Kent's* personal estate, which, at the execution of her will, was an abundant fund for this purpose; and hence she had no motive to subject her lands to an incumbrance. It is too obvious to be disputed, that the present insufficiency of the personalty has arisen from a conversion of personal into real property, in a manner not anticipated by the testatrix. She expected, that debts secured by mortgage would be paid; in which event, the legacies would rest on a sufficient fund; and if she believed that the appropriation of the mortgages, and rendering the estate real, would make no difference, she misconceived the law. But this misconception the court cannot relieve against, unless her last will had given authority, which clearly it has not. It is likewise peculiarly observable, that the legacies are made payable, by Mrs. *Kent's executor*, out of her estate. Now, although the word *estate* is very comprehensive, where the subject matter demands it, and includes real as well as personal property; yet where the *executor* is directed to make payment out of a fund, it must be intended out of *that* fund, over which he has controul. If it be said, that the executor, by order of sale obtained from probate, may dispose of real estate to satisfy a legacy;—a remark, which, from the peculiarity of our system on this subject, I should not be disposed to deny; and that

the direction to the executor to make payment, deriving his fund from the real estate, is, therefore, supposeable; the result would be conclusive against the plaintiff. The competency of the probate jurisdiction would shew, that he has adequate remedy at law. I conclude, then, that the pecuniary legacies are payable out of the personal estate of Mrs. *Kent* only; and that if more than this was intended, by the testatrix, the exercise of the jurisdiction of a court of chancery is unnecessary.

What, then, is the nature of the estate mortgaged to Mrs. *Kent?*

In respect to all the tracts of land, except the piece of 75 acres, in which there is a right of redemption in Mrs. *Hubbell*, they were foreclosed by her, in her life-time, after the publication of her last will, and converted from personal into real estate. So far as relates to these, they are not a fund within the power of the executor, (the plaintiff,) nor applicable to the discharge of pecuniary legacies. They have descended to the heirs of Mrs. *Kent*, unincumbered by any bequest in her will.

As to the tract of 75 acres, it has never been foreclosed; but in relation to one of the mortgages, there still is existing a right of redemption in Mrs. *Hubbell*. Until *complete foreclosure* there is no appropriation of the pledge, or extinguishment of the debt. This is personal property still; the debt is due to the executor; and he alone can foreclose the pledge. *Roath* v. *Smith*, 5 *Conn. Rep.* 133. In this precise condition, a transfer of the title to the plaintiff *as trustee*, unless Mrs. *Hubbell* should redeem, to dispose of the property, and apply the avails, first in payment of the debt, and then in satisfaction of the pecuniary legacies, is within the competency of this Court. It is the appropriation of personal property to a legal purpose.

I would grant a foreclosure, and the prayer of the bill, as to the 75 acres; and would dismiss the bill as to the residue.

PETERS and BRISTOL, Js. were of the same opinion; BRAINARD, J. being absent.

> Bill granted in part, and dismissed as to the residue.