ANDERSON JONES *v.* A. F. WILLIAMS ET AL.

(Filed 11 May, 1911.)

1. **Lis Pendens—Mortgages—Suit of Foreclosure—Situs of Property.**
   One who buys a note, and a mortgage of land securing it, during the pendency of a suit and for the foreclosure of another mortgage on the same land in the county wherein it is situated, and after proper complaint is filed therein, acquires his interest in the note and mortgage so purchased by him subject to any judgment that may be obtained in the pending action, the doctrine of *lis pendens* being applicable.

2. **Same—Formality.**
   When a suit is brought for the foreclosure of a mortgage in the county where the lands embraced therein are situated, it is sufficient notice to those dealing with the mortgagor in respect to the land; and the filing of a formal *lis pendens* is not required to charge a purchaser with such notice.

3. **Mortgages — Liens—Equities—Legal Title—Foreclosure—Parties.**
   A junior mortgagee is not bound by the judgment obtained in a suit by a senior mortgagee for the foreclosure of a mortgage on lands unless he has been made a party to that suit, and he will not be barred of his right to redeem, though not for some purposes a necessary party thereto; and it can make no difference that, in this State, the legal title passes to the mortgagee, and the mortgage is not regarded as a mere security.

4. **Decisions—Rights Acquired—Reversal.**
   Titles or vested interests acquired upon the faith of decisions of this Court will not generally be disturbed or the parties prejudiced by a subsequent reversal thereof.

5. **Mortgages — Junior Mortgagee — Rights — Parties — Decrees, Effect of.**
   The doctrine that junior mortgagees will not be bound by a judgment obtained in a suit for the foreclosure of a senior mortgage, unless they were made parties thereto, has reference only to such as may have had their mortgages recorded under our registration laws.

6. **Mortgages—Power of Sale—Equitable Procedure.**
   The equitable power of a court to foreclose a mortgage is not derived from the power of sale contained therein; and when the mortgagee applies to the court to foreclose, the court pursues its own course of practice without restraint, so as to administer the rights of the parties according to law and its own procedure.

7. Mortgages—Transfer—Legal Title.

 The mere transfer of a note and mortgage securing it does
 not transfer the legal title to lands, or the power of sale con-
 tained in the mortgage.

8. Mortgages—Legal Title—Power of Sale—Equity—Foreclosure.

 When the legal title of mortgaged lands, upon which there
 were several mortgages, is in the first mortgagee, who was not a
 party to a suit for foreclosure, a sale under the decree of fore-
 closure cannot have the same force and effect as if it had been
 made under the power contained in the instrument.

9. Foreclosure Sales—Equity—Bidder—"Proposer"—Confirmation—
 Party—Decree.

 One who bids in property at a sale under a decree of fore-
 closure is a mere proposer until his bid is legally accepted and
 confirmed, and when made a party after his bid and before con-
 firmation, to a prior suit for foreclosure of which he had con-
 structive notice, he is subject to and bound by the final decree in
 that suit.

10. Mortgages—Foreclosure Sales—Legal Title—Parties—Equities—
 Account.

 When a junior mortgagee is not a party to a foreclosure suit
 in equity brought by the assignee of a senior mortgage, the effect
 of the decree is not to deprive him of his equity of redemption,
 and the purchaser at the sale under such a decree takes subject
 to his lien for whatever sum may be due him, and to his right of
 redemption; and in order to ascertain the status and amount of
 the several claims an account may be taken.

11. Mortgages — Foreclosure — Third Parties — Equity — Interested
 Persons—Hearings.

 Where there is the foreclosure of a mortgage under a power of
 sale therein contained, third parties must be vigilant to protect
 their interest, as it is not a judicial proceeding, but simply a
 method adopted by the parties to enforce the lien.

APPEAL from *Whedbee, J.,* at the November Term, 1910, of
DUPLIN.

 This action was brought by the plaintiff to foreclose a mort-
gage on a tract of land, containing originally 245 acres, executed
to him by the defendants, Rufus Branch and wife, to secure a
debt of $379.50 therein described. The other defendant, Fred
Martin, trading under the name and style of E. J. Martin &
Son, was made a party, as Rufus Branch and wife had also

mortgaged the land to him and he had assigned his notes and mortgages to his co-defendant, A. F. Williams. The following facts appear in the case: Summons was issued on 24 December, 1903, in behalf of the plaintiff and against Fred Martin, trading under the firm name and style of E. J. Martin & Son, Rufus Branch and wife, Christiana Branch, and was served 18 January, 1904, on Rufus Branch and wife, Christiana Branch, and 15 January, 1904, on Fred Martin. Complaint and answer were duly filed, and at the March Term, 1904, upon affidavit, A. F. Williams was made a party defendant, he having purchased the two mortgages of E. J. Martin & Son. At August Term, 1904, an order was made directing summons to issue to A. F. Williams, and on October, 1904, summons was served upon him. The plaintiff, Anderson Jones, prior to 1890, sold to the defendant Rufus Branch a tract of land containing 245 acres, and the latter made various payments up to 16 January, 1902, on which date Rufus Branch and wife executed to Anderson Jones their mortgage upon the tract of land to secure the balance of the purchase money of $379.50, which mortgage was duly recorded on 24 October, 1902. In part payment of the purchase price on said tract of land, Rufus Branch and wife, on 23 November, 1901, reconveyed to Anderson Jones forty-six of the 245-acre tract of land by deed, which was duly recorded on 17 November, 1902. On 30 October, 1901, Rufus Branch and wife executed a mortgage deed to Fred Martin, trading as E. J. Martin & Son, to secure an indebtedness of $328 on the 245-acre tract of land, which mortgage was duly recorded on 2 November, 1901. On 16 January, 1902, Rufus Branch and wife executed to Fred Martin, trading as aforesaid, a mortgage upon the 245-acre tract of land to secure an indebtedness of $250, which was duly recorded 25 January, 1902. On 3 March, 1904, A. F. Williams commenced an action in the Superior Court of Duplin County against Rufus Branch and wife, to foreclose the mortgage assigned to him by Fred Martin, and Branch and wife filed no answer. At the August Term, 1904, the court rendered a judgment ordering the land to be sold, and the land was sold by a commissioner and bought by A. F. Williams, and a final decree entered at the November Term, 1904, confirming the sale and

authorizing the purchase price of the land to be credited on Williams' judgment and directing a deed to be made to him for the land. A deed was made and registered 26 November, 1904.

Anderson Jones alleged in his complaint that the defendant, Rufus Branch, executed to him the mortgage on the land to secure the purchase money, and was indebted to him on that account in the sum of $544.50, and also alleged that he had purchased the forty-six acre tract, describing it by metes and bounds, and paid him $150 for the same, and received a deed therefor. He also alleged that the defendant, Rufus Branch, executed to E. J. Martin & Son the notes and mortgages hereinbefore described, and that the defendant A. F. Williams purchased the notes and mortgages after they were due and since the institution of this action and while the same was pending, and that the defendant A. F. Williams went into the possession of all the land except the forty-six acres, and received the rents and profits therefrom, and asked for an accounting and a sale of the land to pay off both debts. It is admitted that the defendant A. F. Williams became the owner of the notes and mortgages of Fred Martin, executed to him by Rufus Branch and wife, after the maturity of the notes and mortgages. It is also admitted that A. F. Williams has been in possession of the 199 acres of land since the notes and mortgages were signed to him by Martin, receiving the rents and profits. The evidence showed the annual rental value of the 199 acres of land was $100, and the annual rental of the forty-six acres was $35.

It was admitted that A. F. Williams commenced the action against Rufus Branch and wife after he had been made a party to this suit by order of the court, although summons was not served upon him until 5 October, 1904. The court submitted to the jury certain issues, which with the answers thereto are as follows:

1. What amount, if anything, is due Anderson Jones on account of his notes and mortgage executed by Rufus Branch and wife? Answer: $379.50, with interest from 1 November, 1902, subject to credit of $16.24 made 1 November, 1902.

2. What sum, if anything, is due upon the mortgage assigned

to A. F. Williams by E. J. Martin & Son? Answer: $250, with interest at six per cent from 16 January, 1902, until paid, subject to a credit of $13.91 made 31 December, 1902; $164, with interest at six per cent from 30 October, 1901; and $328, with interest at six per cent from 30 October, 1901, until paid.

3. Is the defendant A. F. Williams the owner and entitled to the possession of all the land described in the complaint? Answer: Yes.

4. What is the annual rental value of the forty-six acres of land mentioned in the complaint? Answer: $35.

The first two issues were submitted at the request of the plaintiff, and to the third and fourth he excepted and tendered the following additional issue: What is the annual rental value of the 199 acres of land which has been in the possession of the defendant A. F. Williams? The court refused to submit this issue and held, and so adjudged, that in no view of the evidence was the plaintiff entitled to recover with respect to the forty-six acres, either the land or any interest therein, and charged the jury that, if they believed the evidence, they should answer the third issue, Yes. The court further held, as matter of law, that the plaintiff was not entitled to a foreclosure and the defendant Williams was not liable to account for the rents and profits which he had received while in possession of the 199 acres of land. Exceptions were duly taken by plaintiff to the several rulings of the court. It was adjudged upon the verdict that A. F. Williams is the owner of all the land, that is, the 245 acres, and that he recover possession of the same from the plaintiff, with $175, the rental value of the forty-six acres. Plaintiff excepted and appealed.

*Stevens, Beasley & Weeks for plaintiff.*
*W. S. O'B. Robinson & Son for defendant.*

WALKER, J., after stating the case. We think it may fairly be inferred from the record that A. F. Williams bought the notes and the mortgages from Fred Martin during the pendency of this action and after the complaint had been filed therein. If so, he acquired his interest in them subject to any judgment rendered herein, for this suit would be a complete *lis pendens.*

*Lord Bacon* stated the common law rule to be that no decree bindeth any that cometh in *bona fide* by conveyance of the defendant before the bill exhibiteth, and is made no party, neither by bill or order; but when he comes in *pendente lite,* and while the suit is in full prosecution, and without any order of allowance or privity by the court, then regularly the decree bindeth. This rule had its origin in the civil law, and was pungently stated in the legal maxim, *pendente lite, nihil innovetur:* 4 Bacon's Works, p. 515. *Sir William Grant* said in *Bishop of Winchester v. Paine,* 11 Vesey, 194-201, that "he who purchases during the pendency of the suit, is bound by the decree that may be made against the person from whom he derives the title; the litigating parties are exempted from the necessity of taking any notice of a title so acquired; as to them it is as if no such title existed, otherwise suits would be interminable, or, which would be the same in effect, it would be the pleasure of one party at what period the suit should be determined. The rule may sometimes operate with hardship, but general convenience requires it." Wiltsie Mortgage Foreclosures, sec. 41 and notes. It may therefore be taken as well settled that a judgment in an action *in rem* or one to foreclose a mortgage binds not only the parties actually litigating and their privies, but also all others claiming or deriving title under them by a transfer *pendente lite.* The filing a formal *lis pendens* is not required for the application of this recognized principle when the suit is brought in the county where the land is situated. *Dancy v. Duncan,* 96 N. C., 111; *Collingwood v. Brown,* 106 N. C., 362; *Overton v. Hinton,* 123 N. C., 2; *Harris v. Davenport,* 132 N. C., 697; *Morgan v. Bostic, ibid.,* 743; Pell's Revisal, sec. 460 and notes; Wiltsie, sec. 40. While the facts relating to the *lis pendens* are not very clearly set out in the record, we think it sufficiently appears that A. F. Williams was a purchaser *pendente lite,* and must be held bound by the judgment in this action, but there is another question raised in the case which we think was erroneously decided. Our decision is based upon both grounds.

The defendant Williams failed to make the plaintiff, who was a junior encumbrancer, a party to the foreclosure suit brought by him against Rufus Branch, the mortgagor. The plaintiff is

therefore not bound by the proceedings and judgment in that case and his lien upon the land was not affected thereby. In treating of this question, Wiltsie, in section 60, says that persons who have acquired an interest in the equity of redemption by encumbrance, such as a mortgage, subsequent to the execution of the mortgage under foreclosure, are necessarily parties to the foreclosure suit in order to extinguish their claims. "The theory of the law is, that such an encumbrance is a pledge of the equity for the debt, and gives the lienor an equitable interest in the mortgaged premises. As the owner of the equity may, by an absolute conveyance, transfer his entire interest, and thereby make his transferee a necessary party, as we have seen, so he can on the same principle pledge, by a mortgage, judgment or otherwise, a part or the whole of his interest in the premises, and thereby render the encumbrancer a necessary party in order to wipe out his interest. Though a lienor does not acquire the fee title to the equity, he acquires an interest in the premises which the statutes of the various States have long established, and which the courts have long recognized and sustained; and which parties, dealing with the premises, cannot ignore, except at their own peril." He thus sums up the law upon the subject: "All authorities in all countries where mortgages are foreclosed by equitable actions, are agreed that subsequent and junior mortgagees are necessary parties to the foreclosure of a prior mortgage in order to extinguish and cut off their liens. The action can be sustained without them, but a defective title would be offered at the sale which no court would compel a bidder to accept. The rule has long been settled that in a bill to foreclose a mortgage, the rights of encumbrancers not made parties to the suit, are not barred or affected by the decree. If a junior mortgagee is omitted as a party, his remedy is to redeem from the sale under foreclosure." Wiltsie, sec. 61. He cites numerous and well considered cases to sustain his views. In *Gage v. Brewster,* 31 N. Y., 218, a case much like ours, the Court said: "The plaintiff was not affected by the foreclosure suit upon defendant's mortgage, to which he was not made a party. He was, therefore, entitled to redeem, precisely as though no such action had been brought, namely, by paying the mortgage debt

and interest. . . . When seeking to extinguish the equity of redemption and to bring the premises to a sale, it was his duty to ascertain to whom that equity of redemption belonged. It was the subject of transfer by sale or mortgage, and it had been actually mortgaged to the plaintiff, and his mortgages were on record." So it was said in *Gould v. Wheeler,* 28 N. J. Eq., 541: "The complainant would be entitled to a decree of foreclosure and sale, but for the fact that it appears by her bill that there is a subsequent encumbrancer, a mortgagee, who is not made a party to the suit. That mortgagee is a necessary party. A mortgagee who comes into court for foreclosure and sale of the mortgaged premises, is not at liberty to omit, as parties to the proceedings, those who hold encumbrances subsequent to his own. The general rule is, that the holders of all encumbrances existing at the time of commencing the suit must be made parties. Story's Eq. Pl., sec. 193; *Ensworth v. Lambert,* 4 Johns., ch. 605; *Adams v. Paynter,* 1 Col. C. C., 530; I Fisher on Mortgages, 554, 555, 556. It is true that if they be not made parties, the proceedings are of no avail against them, but that is no reason for making a suit for foreclosure and sale of mortgaged premises an exception to the general rule of equity, which requires that all persons in interest be parties to the suit. It is manifestly unjust to all persons interested in the proceeds of the sale of the mortgaged premises, that the sale be made subject to an outstanding right to redeem, for that invariably and inevitably prejudices the sale. The bill must be amended by making the holder of the mortgage given by Stewart (the third mortgage) a party, and he must be brought into court, and the cause be proceeded in regularly as against him. In the meantime the suit will be stayed." Cases directly in point are *Murphy v. Farwell,* 9 Wis., 102; *Carpenter v. Brenham,* 40 Cal., 221; *Johnson v. Hosford,* 110 Ind., 572; *County of Floyd v. Cheney,* 57 Iowa, 160; *Stewart v. Johnson,* 30 Ohio St., 24; *Johnson v. Hambleton,* 52 Md., 378; *Watson v. D. M. & T. Investment Co.,* 12 Oregon, 474; *Rogers v. Holyoke,* 14 Minn., 220; *Smith v. Chapman,* 4 Conn., 344; *Hodgen v. Gutlery,* 58 Ill., 431. The case last cited is strikingly like the case at bar in its facts. In *Hall v. Hall,* 11 Texas, 547 (approved after-

wards in *Mills v. Traylor,* 30 Texas, 7), it is said: "All persons
having an interest in the equity of redemption should be made
parties to a bill of foreclosure. If such encumbrancers, whether
prior or subsequent, are not made parties, the decree of fore-
closure does not bind them, as also a decree of sale would not.
The prior encumbrancers are not bound, because their rights are
paramount to those of the foreclosing party. The subsequent
encumbrancers are not bound, because their interest would other-
wise be concluded, without an opportunity to assert or protect
them. In the case now under consideration, the lands were sold
to the appellees subsequent to the mortgage to appellants, and
it may be held, that the appellees took the property subject to
that encumbrance. They should, however, not have been pre-
cluded or affected by a proceeding had in their absence and
without notice." In *Crane v. Cotrell,* 48 Neb., 646, the Court
applied the principle and said: "The plaintiffs were not made
parties to the foreclosure suit, and were not bound by those pro-
ceedings. The mere fact that they had notice of its pendency
did not make them parties or bind them by the decree. This is
elementary. The foreclosure and sale were therefore utterly
ineffectual to bar plaintiff's mortgage. A junior mortgagee who
has not been made a party to the proceeding foreclosing the
senior mortgage has thereafter a right to redeem from such
senior mortgage (the purchaser at the judicial sale). (*Renard
v. Brown,* 7 Neb., 449.) Therefore, when this foreclosure was
properly pleaded in the present case, the facts demanded that
the plaintiffs, instead of merely having their mortgage re-estab-
lished, should be permitted to redeem the Stoddar mortgage.
Why the court denied this relief and denied plaintiffs any relief,
the record does not inform us. . . . If he (Stoddar) did
not know of plaintiffs' rights when he took the mortgage, he
learned them within a very few days thereafter. At the time
of the foreclosure sale this very suit was pending in which he is
a party. He had full notice of all the facts. A mistake of law
would not protect him." The Court, in *Howard v. R. R.,* 101
U. S., 837, held that while the senior mortgagee can proceed by
suit to foreclose against the mortgagor alone, and in that sense
a subsequent lienor or encumbrancer is not a necessary party, the

decree is not binding upon the latter so as to supersede or displace his lien, but it left him still the right, as a second encumbrancer, to redeem, which he may do if his right is not lost by laches or lapse of time. "Subsequent encumbrancers," says *Justice Clifford,* who delivered the opinion, "when not made parties to a bill for foreclosure or sale, are not bound by the decree; nor is that rule violated in the least degree when it is held that the title of the defendants is paramount, as that consequence flows from the fact that the lien of the judgment under which the defendants claim is prior to that under which the plaintiff claims his title. Whatever rights the plaintiff had prior to the sale in equity which gives the defendants the paramount title, he still has, wholly unimpeached by that sale or by any other cause, unless they are barred by lapse of time or laches. Process against the plaintiff under that decree could not affect his rights, as he was not a party to the proceeding, consequently the lien of his judgment still remained in full force. Even if the plaintiff had been made a party to that proceeding, the only effect would have been to cut off his equity of redemption, and as he was not made a party, his equity of redemption is not extinguished." The counsel of defendant Williams, Mr. John Robinson, in his excellent brief, and also at the bar in his well prepared and forceful argument, relied on the following cases: *Kornegay v. Steamboat Co.,* 107 N. C., 115; *Lumber Co. v. Hotel Co.,* 109 N. C., 658; *Williams v. Kerr,* 113 N. C., 306, and *Gammon v. Johnson,* 126 N. C., 64; and contended that it had been decided by them that a second encumbrancer is not a necessary party to a foreclosure suit by the first lien-holder or mortgagee. This may be conceded, and yet the deduction drawn therefrom, that he will be barred of his right to redeem, is not warranted. We have said he is not a necessary party, in the sense that the decree will be void without him as to those who are parties, but he is clearly entitled to redeem and we think that the Court, in *Williams v. Kerr* and *Gammon v. Johnson,* approves the principle as we have stated it. In the case last mentioned he is said to be a necessary, or at least a proper, party in order to have a complete adjustment of the rights of· all interested persons, and further, that the court should *ex mero*

*motu* require him to be brought in by process so as to conclude him. In *Williams v. Kerr* the assignee of the mortgagor was held, for special reasons, to be affected by the foreclosure suit, as a *lis pendens,* and to be bound by its orders and decrees. In the *Kornegay and Lumber Company cases,* the Court had under consideration the priority of a lien, under the statute, of a mechanic or material-man. In none of those cases, as we read and understand them, was the precise question raised which is now before us for decision, and we think that all those cases may be reconciled with what we have hereinbefore said as to the effect of a decree upon a junior encumbrancer not a party to the foreclosure sale. *Pitt v. Moore,* 99 N. C., 85. There is nothing decided in *Hinson v. Adrian,* 86 N. C., 61, that militates against the views we have so far expressed, but the decision rather coincides with them. The Court says: "While there is some diversity of opinion as to the practice in requiring the presence of prior and posterior mortgagees in a foreclosure suit, the *preponderance* of authority favors the propriety, if not the necessity, of their being parties, in order to a full and final adjustment of all the equities involved." It is true that, when referring to certain authorities upon the subject, it is casually said that, if not made a party, the second encumbrancer would be concluded without an opportunity to assert his rights or protect them, but this was an inadvertence, we think, and not justified by the cases, and directly opposed to the overwhelming weight of authority, and it was not at all necessary to the decision of the case. Nor do we think it is sustained by the authorities cited. It was merely stated for the purpose of showing how unjust it would be to bind without a hearing. The court, in that case, ordered the junior encumbrancer to be made a party. We think there is nothing decided in those cases in conflict with our present ruling, but if anything had been so decided, we would unhesitatingly refuse to follow it, in view of the great weight of authority the other way, unless compelled to do so because it may involve a question of title. But we are not confronted by any such situation. If we have decided in any case the very question not presented contrary to what we now decide, the precedent will be controlling so far as to protect any titles

or vested interests which have been acquired upon the faith of it. Parties have the right to act upon the decisions of this Court in acquiring titles, and such titles will not be disturbed or the parties prejudiced by a subsequent reversal of the decision. We have so held in two recent cases: *Hill v. R. R.,* 143 N. C., 539; *Hill v. Brown,* 144 N. C., 117. Such a rule is based upon an ancient maxim of the law, is a just one and should be perpetuated. Broom's Legal Maxims (8 Ed.), p. 34, 35. Further, we will say that the principle of this decision will not apply to a subsequent mortgagee whose mortgage is not registered. This application of the rule to such a case would be intolerable. If parties withhold their deeds from registration, they must take the consequences of their own neglect. The law abhors secret liens, and it is now the firmly established policy of this State, and has been since 1885, to require the registration of deeds and other instruments and to protect innocent purchasers against the claims of those who have not complied with the law. Pell's Revisal, sec. 979-981 and notes; Acts of 1885, ch. 147.

It is suggested that the rule applied in this case does not obtain in States where the legal title is held to pass by the conveyance to the mortgagee, as in this State, but only in those where a mortgage is considered merely as a lien, or a security for the payment of the debt. But an examination of the authorities will disclose that they recognize no such distinction. In the States of New Jersey, Connecticut, Maryland, Illinois, Ohio, and others, from the reports of which we have cited cases, it has been held that the legal title passes to the mortgagee. 20 Am. & Eng. Enc. (2 Ed.), p. 900 and note 5. The rule rests upon the reasonable assumption that the junior encumbrancer has an interest which should be protected by the courts, and which cannot be taken from him or impaired without notice and an opportunity to be heard. "It has long been the received rule (expressed in the maxim *audi alteram partem*), that no one is to be condemned, punished or deprived of his property in any judicial proceeding, unless he has had an opportunity of being heard." Broom Legal Maxims (8 Ed.), p. 112.

The defendant Williams further contends that he had as good a title as if he had foreclosed under the power of sale, as the

court in the foreclosure suit was merely selling in accordance with the power by substituting a commissioner in the place of the mortgagee, and that therefore the case of *Dunn v. Oettinger,* 148 N. C., 276, where the trustee sold under the power, applies. But this contention is squarely met by our recent decision in *McLarty v. Urquhart,* 153 N. C., 339, in which *Justice Brown* says: "Notwithstanding the power, the mortgagee may invoke the aid of the court in foreclosing the equity of redemption instead of resorting to the power. Likewise in case of complications, the mortgagor has frequently resorted to the courts for protection and compelled foreclosure under their protection. *Capehart v. Biggs,* 77 N. C., 261; *Kornegay v. Spicer,* 76 N. C., 96; *Whitehead v. Hellen,* 76 N. C., 99; *Kidder v. McIlhenny,* 81 N. C., 131; *Manning v. Elliott,* 92 N. C., 51, are precedents in point. This plaintiff preferred to seek aid of the court to foreclose instead of pursuing the power contained in the instrument. Had he pursued the latter he must follow its provisions substantially, but the court is not bound to follow them. Its power to foreclose is not derived from the power of sale in the mortgage. It could decree foreclosure if the instrument contained no such power." The court acts under its general equity jurisdiction and proceeds to grant relief irrespective of the stipulations contained in the power of sale. It pursues its own course and practice without any restraint by reason of the power of sale contained in the deed, so as to administer the rights of the parties according to law and its own equitable procedure, acting under its own powers and jurisdiction and not by virtue of any contractual power given in the mortgage or deed of trust. But it must not be overlooked that the defendant Williams did not acquire the legal title to the land by the assignment of the notes and mortgages to him. The notes were transferred and the mortgage, but without any conveyance sufficient to transfer the legal title of the mortgagee. *Williams v. Teachey,* 85 N. C., 402; *Dameron v. Eskridge,* 104 N. C., 621; *Hassey v. Hill,* 120 N. C., 312; *Morton v. Lumber Co.,* 144 N. C., 31 (*s. c.,* 152 N. C., 54); *Modlin v. Insurance Co.,* 151 N. C., 35. "In some of the States a mortgage is held by statutory regulation or judicial construction to be simply a lien, leav-

ing the legal estate in the mortgagor. In North Carolina and
many other States the common law prevails, and the mortgage
deed passes the legal title at once, defeasible by subsequent per-
formance of its conditions." *Lumber Co. v. Hudson,* 153 N. C.,
96. This being so, and it is conceded in the defendant's brief
that it is so, the assignment of the note and mortgage did not
vest the legal title to the land in Williams, nor the power of
sale as incident of it. *Norman v. Hallsey,* 132 N. C., 6; *Wil-
liams v. Teachey, supra.* The legal title and power, therefore,
remained in Fred Martin, the mortgagee, and he was not a
party to the foreclosure suit. It follows that the court was not
proceeding under the power contained in the deed when it
ordered a sale of the land. The person having the legal title and
power is a party to this suit, and was at the time that Williams
took the assignment, and Williams himself was made a party by
the service of process before his bid at the sale had been accepted
by the court and the sale confirmed. He was a mere proposer
until it was accepted and confirmation took place. *Joyner v.
Futrell,* 136 N. C., 301, and cases cited. The sale and deed of
the commissioner had no more than the effect of foreclosing the
equity of redemption, leaving the legal title outstanding in Fred
Martin, the mortgagee. Under all these circumstances, Williams
must be adjudged to be bound by the orders and decrees in
this suit, so far, at least, as may be necessary to a satisfaction of
the plaintiff's claim by foreclosure of his mortgage or other-
wise. In other words, whatever rights or interest Williams has,
he acquired subject to the plaintiff's lien and the latter may
redeem as against him, if his debt has not already been paid or
satisfied, and in order to ascertain the status of the several
claims an account may be taken, if necessary. We will not even
suggest upon what principle the account should be taken, as that
must be decided first by the court below, and besides, we cannot
anticipate what the evidence will be. But we may safely say
that the plaintiff is not entitled to recover any more than the
amount of his debt, or such portion of the original debt as
remains unsatisfied.

There is no analogy between this case and those where sales
are made under a power contained in a mortgage or deed of

trust, or under an execution issued upon a judgment, for in the former case when the party acts under a power he is proceeding out of court, and in the case of an execution sale he is proceeding under a statutory power or mandate, and the court is not called upon to exercise its equitable jurisdiction and do what is manifest justice as between all parties interested. The plaintiff is merely enforcing a right acquired at law by legal process in accordance with the statute, and that is all. In such cases, third parties must be vigilant and take care of their interests. But when a court of equity or a court having equitable jurisdiction, is invoked to grant relief quite a different case is presented. It strives to do justice and will not deprive a party of his property without a hearing. The distinction is too familiar and manifest to require further elucidation. *Menzel v. Hinton,* 132 N. C., 660; *Cone v. Hyatt,* 132 N. C., 810.

Our conclusion is that the court erred in its rulings. The verdict will be set aside and a new trial granted, the case to proceed further in the court below, in accordance with the law as herein declared.

New trial.

CLARK, C. J., dissenting. It has always been held for law in this State that a purchaser at a sale under a second mortgage acquires the property subject to the lien of the first mortgage. But that the purchaser at a sale under the first mortgage acquires the property absolutely free from the liens of subsequent mortgages. Purchasers at such sales are required therefore to examine only for prior encumbrances not as to subsequent ones.

In *Gambrill v. Wilcox,* 111 N. C., 42, it was held that the purchaser at the execution sale under a junior docketed judgment acquires the property subject to the lien of prior docketed judgments, but that the purchaser at an execution sale under a senior docketed judgment acquires the property free from the liens of all junior judgments. This is put upon the express ground, therein stated, that "the lien of a docketed judgment is in the nature of a statutory mortgage." This case has been cited since in *Baruch v. Long,* 117 N. C., 511; *Bernhardt v. Brown,* 118 N. C., 710, and other cases.

155—13

When the sale is made under a power of sale contained in the mortgage there is no opportunity to make subsequent mortgagees parties, nor has it ever been required that notice be given to them. The second mortgagees are fixed with notice of the prior recorded mortgage by statute, and they take only the equity of redemption.

When the sale is made under foreclosure proceedings, the purchaser is not required to examine for subsequent encumbrances. He takes with notice only of the judgment which adjudges the validity of the mortgage and decrees the sale thereunder. He is not required to examine for subsequent encumbrances, any more than a purchaser at a sale under a docketed judgment or a purchaser at a sale under a mortgage with power of sale.

It has been repeatedly and most explicitly declared by this Court, *Kornegay v. Steamboat Co.,* 107 N. C., 117; *Lumber Co. v. Hotel Co.,* 109 N. C., 658; *Williams v. Kerr,* 113 N. C., 311; *Gammon v. Johnson,* 126 N. C., 66; that in a proceeding for foreclosure it is not necessary that the holders of junior mortgages be made parties. But if the purchaser could not get a good title at such sale unless subsequent mortgagees are made parties, then they would be necessary parties beyond question. Those decisions hold that it is advisable to make such junior mortgagees parties, and even that the court may add them *ex mero motu.* The reason given is that thereby they may have opportunity to participate in the surplus, if any, derived from the sale over and above the payment of the first mortgagee and the cost of proceedings, which surplus the mortgagor might otherwise dissipate. This reason looks to the convenience and advantage of the second mortgagees, but does not affect the title acquired by the purchaser.

It has been held in many cases that a docketed judgment, though a lien upon the land, does not divest the estate out of the debtor nor transfer his title and does not even make the land primarily liable for the debt. *Dysart v. Brandreth,* 118 N. C., 968, and cases cited in Clark's Code (3 Ed.), p. 592. If therefore in such case, where the title and the estate still remain in the judgment debtor, the purchaser at the execution sale under a senior judgment takes the property divested of the lien of sub-

sequent docketed judgments without any notice being given to the holders of the sale, for a stronger reason when the land is sold under a decree of foreclosure the purchaser must take without notice of any subsequent encumbrances which are not recited in the judgment because by the first mortgage the title and the estate is transferred to the mortgagee subject only to the sale and return of the surplus, if any, to the mortgagor.

The subsequent mortgagees take only a mortgage upon the equity of redemption. The legal title and the estate are in the first mortgagee and the purchaser at the sale under the first mortgage can be no more affected by any subsequent liens than the first mortgagee himself. Indeed the purchaser at such sale is in a better condition than the mortgagee, for he takes the legal title which was vested in the mortgagee discharged of the trusts thereto attached. The purchaser is not required to see to the application of the purchase money. He has discharged his duty when he has paid the money into court at a sale under a decree of foreclosure, or has paid it to the mortgagee at a sale under power of sale, and has taken his deed.

In foreclosure proceedings, as the Court has always held, *Gammon v. Johnson,* 126 N. C., 66, and other cases above cited, it is advisable to make subsequent mortgagees parties that they may look to their liens upon the surplus. If not made parties in the summons, they can ask to be joined, or the court *ex mero motu* can make them parties. But their not being parties cannot impair the title of the first mortgagee who by virtue of his prior contract holds the legal estate, nor can it affect the purchaser who acquires the estate and title of the first mortgagee.

For the above reasons this Court has always held that junior mortgagees are advisable parties to foreclosure proceedings upon a prior mortgage, but not necessary parties. Hence, if they are not made parties the purchaser at the sale acquires, nevertheless, a good title.

It will place a new burden upon purchasers at such sales to impair their title by a constructive notice of junior encumbrancers whom the court ordering the sale has not seen fit to make parties.

The purchaser at the foreclosure sale under the first mortgage

in this case had a right to rely upon the uniform decisions of this Court that it was not necessary to make subsequent encumbrancers parties. But if, notwithstanding, his title is held defective, and that, too, not by setting aside the sale by motion in that cause, but in a collateral proceeding to foreclose under the junior recorded mortgage, certainly in this proceeding it is necessary to make the senior mortgagee a party. At such sale under the junior mortgage, the first proceeds must be applied to the payment of the lien of the first recorded mortgage, after payment of costs.

If, as is suggested, the assignment by the first mortgagee is defective, the assignee (who was also purchaser at the foreclosure sale) must be made a party, and the decree should direct a repayment to him of the purchase money out of so much of the proceeds of the sale, now to be made, which are to be applied to the discharge of the lien of the first mortgage.

The foreclosure sale under the first mortgage was either valid or invalid. If valid, the purchaser got a good title. If invalid, then at the foreclosure sale under the second mortgage the lien of the first mortgage must first be paid off out of the proceeds of the sale. The first registered mortgage cannot be deprived of its priority given by statute.